880 P.2d 1148

**WILSHIRE INSURANCE COMPANY, a North Carolina corporation, Plaintiff/Appellant,**

v.

**THE HOME INSURANCE COMPANY, a New Hampshire corporation, and The Home Indemnity Corporation, a New Hampshire corporation, Defendants/Appellees.**

No. 2 CA–CV 94–0190.

Court of Appeals of Arizona, Division 2, Department A.

Aug. 11, 1994.

Gust Rosenfeld by Richard A. Segal and Robert W. Goldwater, Phoenix, for plaintiff/appellant.

Raymond, Greer & Sassaman, P.C. by Michael J. Raymond and Randy L. Sassaman, Phoenix, for defendants/appellees.

## OPINION

LACAGNINA, Judge.

The issues in this appeal from a declaratory judgment require us to examine more than one article of Chapter 7 of the Uniform Motor Vehicle Safety Responsibility Act (the Act), A.R.S. §§ 28–1101 to 28–1262, in order to decide the applicability of the permissive user coverage mandated by policies issued in compliance with § 28–1170 to policies issued in compliance with § 28–1233 and the amount of coverage provided when a policy exclusion violates the permissive user provisions of § 28–1170.

This action involves the coverage afforded by a business automobile policy issued by Wilshire Insurance Company to Garland Johnson and Southern Distributors, a business automobile policy issued by Home Insurance Company to Cimetta Engineering and Construction Company, and a commercial general liability policy issued to Cimetta by The Home Indemnity Company. After cross-motions for summary judgment, the trial court denied Wilshire's motion and granted Home's. We reverse the trial court's judgment, finding that the legislature has treated the motor carriers defined in article 7 of Chapter 7 differently from other motor vehicles. Therefore, the loading and unloading exclusion in Wilshire's policy is valid and does not cover the liability of Cimetta's employees while unloading Cimetta's materials from Johnson's truck.

## FACTS

The facts are undisputed. On May 24, 1991, Johnson delivered to Cimetta a trailer-load of pipe attached to a tractor covered by Wilshire's business automobile policy. While employees of Cimetta were unloading pipe from the trailer, a section of pipe rolled off the trailer, injuring Johnson. Cimetta's employees had Johnson's permission to unload the trailer. Johnson sued Cimetta, claiming his injuries were caused by the negligence of Cimetta's employees acting in the course and scope of their employment. Home initially defended Cimetta but later tendered the defense to Wilshire and demanded that Wilshire assume Cimetta's defense. Wilshire assumed the defense under a reservation of rights.

Wilshire's policy, which provides $750,000 single limit liability coverage, excluded Cimetta's employees as insureds while loading or unloading the trailer. The policy provides:

**D.  Who Is Insured.**

*    *    *    *    *    *

2.  Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

*    *    *    *    *    *

c.  Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto.**

The parties agree the exception in the Wilshire policy excludes Cimetta's employees from coverage for the accident unless the exclusion is invalid.

## SUMMARY JUDGMENT ORDER

The trial court concluded that Home was entitled to summary judgment as follows:

A liability policy which extends coverage for loading and unloading only to the named insured and the lessee or borrower of the insured truck, or the employees of the named insured or the lessee or borrower, violates that section of the Uniform Safety Responsibility Act requiring that coverage be extended to any person using the insured vehicle. *Mission Ins. Co. v. Aid Ins. Services*, 120 Ariz. 220, 585 P.2d 240 (1978). The exclusion at issue in Plaintiff's policy is therefore void and unenforceable.

The term "use" includes the loading and unloading of the insured vehicle. *Id.* A.R.S. § 28–1234(A) states, inter alia, that a person who operates motor vehicles and is subject to the financial responsibility requirements of this article shall maintain at all times the amounts prescribed by A.R.S. § 28–1233 which obligates the person to pay compensation for injuries to

persons by reason of the ownership, maintenance or use of any motor vehicle or vehicle combination owned or operated by the person.

Pursuant to A.R.S. § 28–1233, Plaintiff's policy has a combined single limit of $750,-000.00. This Court concludes that the limit of the omnibus coverage under Plaintiff's policy, pursuant to A.R.S. § 28–1234(A), is $750,000.00.

## DISCUSSION

The coverage exclusion in Wilshire's policy is unenforceable only if it is subject to the omnibus coverage requirement of A.R.S. § 28–1170(B)(2), which is found in article 4 of the Act. That section reads:

**B.** The owner's policy of liability insurance must comply with the following requirements:

\*  \*  \*  \*  \*  \*

2. It shall insure the person named in the policy as the insured and any other person, as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each motor vehicle. . . .

Wilshire's policy was issued pursuant to the requirements of A.R.S. § 28–1233, which covers motor vehicles described in article 7 of the Act. This is a self-contained article dealing with vehicles over 20,000 pounds, vehicles transporting passengers and vehicles transporting hazardous materials or waste. The coverage is mandatory in the amounts required based on weight and use and varies from $300,000 to $5,000,000. Sections 28–1231 to 28–1237 of article 7 were enacted in 1982, and the legislature was aware of all the other articles then comprising the Act. The requirements of article 4, which contains § 28–1170, and the requirements of article 7 are not ambiguous or inconsistent. The statutes are different and cover different types of vehicles. We have previously held that

the legislature could rationally distinguish between private and governmental units when applying provisions of the Act. *Heartfield v. Transit Management of Tucson,* 171 Ariz. 181, 829 P.2d 1227 (App.1991). In that case we held that § 28–1221 exempted the City of Tucson from complying with § 28–1233(A)(2)(a), which requires liability coverage of $5,000,000 and uninsured motorist coverage of $300,000. Section 28–1221 not only exempts governments from the provisions of Chapter 7 of the Act, but also motor vehicles that are "subject to the requirements of any provisions of law requiring insurance . . . on certain types of vehicles." The legislature enacted article 7, entitled "Motor Carriers Financial Responsibility," to describe the particular types of vehicles by size and use, and by so doing, mandated the described coverage otherwise exempted from the requirements of Chapter 7. The use of the words in § 28–1232(A) and (B), "[n]otwithstanding any statute," is further evidence of the legislative intent to enact a self-contained article dealing with motor carriers and their use for commercial purposes. "Notwithstanding" means "[i]n spite of." The American Heritage Dictionary 850 (2d college ed. 1991). The provisions of § 28–1233 are mandatory in spite of the exemption from other provisions of Chapter 7.

In addition, there are differences between the provisions of article 4 and article 7. Section 28–1170 in article 4 does not require uninsured motorist coverage; § 28–1233 in article 7 does. Section 28–1233(B) in article 7 requires lessors to ensure that their lessees are covered under the lessors' liability insurance or that the lessees meet the financial responsibility requirements. If a lessee uses the vehicle for a purpose that requires more coverage, the lessee must obtain the additional coverage. § 28–1233(C). Lessees are permissive users, and if the legislature had intended the provisions of § 28–1170 to apply to the motor carriers described in § 28–1233, it could have said so directly or it could have omitted the provision requiring lessors to insure lessees. The permissive user requirement of § 28–1170, on the other hand, does not place any responsibility upon a permissive user to obtain any coverage under any

circumstance. Finally, § 28–1233 imposes the burden of compliance with its coverage requirements on the vehicle owner, *Federoff v. Aetna Casualty & Surety Co.*, 163 Ariz. 371, 788 P.2d 104 (App.1989); under § 28–1170(B), the burden is placed on the insurer.

Although not argued, the legislature indicated its intent to treat the motor vehicles described in article 7 differently from those vehicles covered by other provisions of the Act, as evidenced by its enactment of § 28–1252, which enumerates exemptions to the financial responsibility requirements. Section 28–1251 of article 8, which is entitled "Mandatory Motor Vehicle Insurance," provides:

A. Every motor vehicle operated on any highway in this state shall be covered by one of the following:

1. A motor vehicle or automobile liability policy which provides limits not less than those prescribed in § 28–1170.

2. An alternate method of coverage as provided in § 28–1167.

3. A certificate of self-insurance as prescribed in § 28–1222.

In addition, the statute imposes civil penalties for violations. On the other hand, § 28–1252 provides:

This article does not apply to the owner or operator of:

\*  \*  \*  \*  \*  \*

5. A motor vehicle or vehicle combination subject to the financial responsibility requirements of article 7 of this chapter.[1]

---

[1] Section 28–1231 et seq.

Section 28–1252 was in effect on May 24, 1991, when the accident in this case occurred, and its repeal has been delayed to June 30, 1995. 1993 Ariz.Sess.Laws ch. 1, § 19.

Further evidence of the legislative intent to treat motor carriers and the motor vehicles described in article 7 differently is the enactment of § 28–1235, which permits self-insurance, and § 28–1237, which imposes criminal penalties for violations of the article. There are no criminal penalties provided for failure to comply with the mandatory insurance requirements of § 28–1251. Home asks us to incorporate the provisions of § 28–1170(B)(2) into the provisions of article 7 covering motor carrier financial responsibility without any indication by the legislature that that is what it intended. As we noted earlier, §§ 28–1231 to 28–1237 were added to the Act in 1982. Article 4 was enacted in 1951. 1951 Ariz.Sess.Laws ch. 122. The legislature has intentionally treated motor carriers and motor vehicle combinations differently from other sizes and types of motor vehicles and exempted them from other provisions of the Act. Whether this is wise is not for us to say. Rules governing statutory interpretation prevent us from disregarding a clear legislative intent to treat motor carrier financial responsibility as a separate matter with separate duties, responsibilities and penalties. *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304 (1983); *Abbott v. City of Tempe,* 129 Ariz. 273, 630 P.2d 569 (App.1981).

Home correctly argues that the holdings in *Sandoval v. Chenowith,* 102 Ariz. 241, 428 P.2d 98 (1967), and *Jenkins v. Mayflower Insurance Exchange,* 93 Ariz. 287, 380 P.2d 145 (1963), insert an obligatory omnibus clause into every automobile liability policy. The trial court in this case relied upon *Mission Insurance Co. v. Aid Insurance Services,* 120 Ariz. 220, 585 P.2d 240 (1978), for the same proposition. All three cases, however, were decided prior to 1982 when article 7 was enacted and did not involve the issues raised in this case. Because article 7 had not been enacted yet, § 28–1170 was the only statute then covering motor vehicle financial responsibility.

The legislature plainly stated that article 7 applies to commercial motor vehicles used for commercial purposes and in the transportation of hazardous waste and not to smaller businesses or private trucks and personal automobiles. The exclusion of car-pool operators from the provisions of article 7, § 28–1232(C), is another example of the legislative intent to distinguish the requirements of § 28–1233 from § 28–1170.

Our holding that the loading and unloading exception in Wilshire's policy is valid eliminates the need to decide what amount of

606

coverage is afforded if the exception were invalid.

In summary, we hold that the provisions of § 28–1233 do not require complete omnibus coverage, and a policy provision issued pursuant to the statute limiting coverage to the insured, its lessees, and borrowers when loading and unloading is not invalid. The enactment of article 7 in 1982 did not incorporate or amend by implication the provisions of § 28–1170 but was an act of the legislature covering different types of vehicles and their uses.

The case is reversed and remanded for entry of judgment in favor of Wilshire.

LIVERMORE, P.J., and FERNANDEZ, J., concur.