THUMMA, Chief Judge:
¶ 1 In this family law case, Tonya L. Doty-Perez (Tonya) appeals from an order finding Arizona Revised Statute (A.R.S) section 25-409(C)(2) (2018) unconstitutional as applied. For the reasons that follow, this court vacates that finding and remands for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 2 Tonya and Susan Doty-Perez (Susan) were married in Iowa in 2011, at a time when Iowa recognized same-sex marriage but Arizona did not. Later, the couple moved to Arizona and decided to adopt four children. At that time, Arizona law did not allow joint adoption by a same-sex couple. Accordingly, Tonya alone adopted the four children after the parental rights of the biological parents had been terminated. Although Tonya and Susan jointly parented the children, and the children treat them both as parents, Tonya was and is the only legal parent of the children. See A.R.S. § 25-401(4) (" 'Legal parent' means a biological or adoptive parent whose parental rights have not been terminated.") (2018).[1]
¶ 3 The relationship between Tonya and Susan later deteriorated and, on April 14, 2015, Susan filed a Petition of Dissolution of Marriage.[2] After Obergefell v. Hodges , --- U.S. ----, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015) (holding "same-sex couples may exercise the fundamental right to marry"), Susan sought (1) rights "as a parent" to the children and, alternatively, (2) third-party visitation rights. The superior court considered these requests in that order.
¶ 4 The superior court denied Susan's request to be declared a legal parent in October 2015, a decision this court affirmed in December 2016. See Doty-Perez v. Doty-Perez , 241 Ariz. 372, 388 P.3d 9 (App. 2016) (" Doty-Perez I "). The Arizona Supreme Court denied Susan's petition to review Doty-Perez I in August 2017 and the mandate issued in September 2017.
¶ 5 Susan sought third-party visitation under A.R.S. § 25-409(C)(2),[3] which allows "a *1210 person other than a legal parent" to seek "visitation with a child." As applied, that statute states a court
may grant visitation rights during the child's minority on a finding that the visitation is in the child's best interests and that ... [t]he child was born out of wedlock and the child's legal parents are not married to each other at the time the petition is filed.
Id. (emphasis added). Tonya moved to dismiss Susan's request, arguing that, because the children were adopted, they were not "born out of wedlock." See Sheets v. Mead , 238 Ariz. 55, 56 ¶ 1, 356 P.3d 341, 342 (App. 2015) (holding adoption changes a child's "legal status" to being "born in wedlock" under A.R.S. § 8-117(A) ).[4] Accordingly, Tonya argued Susan could not make the showing required for third-party visitation under A.R.S. § 25-409(C)(2).
¶ 6 Tacitly agreeing Susan could not make the required showing that the children were born out of wedlock for visitation under A.R.S. § 25-409(C)(2), the superior court found the statute unconstitutional as applied. Using the rational basis test, the court found the statute treats "adopted children differently than natural born[5 ] children for third party visitation." The court concluded that " § 25-409(C)(2) treats adopted children and natural born children differently and that difference in treatment" contravenes "the Legislature's intent in drafting § 8-117(A) to put adopted children and naturally born children on equal footing in matters of law." Citing McGowan v. Maryland , 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the court concluded that
denying adopted children the love, care, and other benefits that may come with a third party visitation when a natural born child in the same position stands to receive those benefits does not pass the rational basis test. Whether a child is adopted or not adopted is "wholly irrelevant to the achievement of the State's objective," ... of granting third party visitation rights to individuals who are not likely to harm children. [Thus] [a]n individual seeking third party visitation rights cannot even get their foot in the door to make a case for why they should be able to visit children they helped raise is evidence that this statutory scheme is "wholly irrelevant to the achievement of the [S]tate's objective."
This court has jurisdiction over Tonya's timely appeal from the ruling pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).
DISCUSSION
¶ 7 This appeal raises issues of statutory interpretation and constitutionality, which this court reviews de novo. Mohave Cty. v. Ariz. Dep't of Water Res. , 242 Ariz. 492, 493 ¶ 4, 398 P.3d 108, 109 (App. 2017) ; Jackson v. Tangreen , 199 Ariz. 306, 309 ¶ 5, 18 P.3d 100, 103 (App. 2000). Tonya argues: (1) Susan lacks standing to challenge the constitutionality of A.R.S. § 25-409(C)(2) ; (2) the superior court was required to dismiss Susan's request for third-party visitation because the children were not "born out of wedlock" as required by A.R.S. § 25-409(C)(2) ; and (3) the statute is constitutional under the rational basis test. This court considers each argument in turn.[6]
*1211 I. Susan Has Standing To Challenge The Constitutionality Of A.R.S. § 25-409(C)(2).
¶ 8 Tonya argues that Susan lacks standing to challenge the constitutionality of A.R.S. § 25-409(C)(2) as applied because she "is not a child at issue-adopted or biological, born in or out of wedlock. She is not a member of any possible class that could be potentially suspect by application of this statute." Factually, that may be true. But as Tonya also notes, "a litigant may be accorded standing to assert the constitutional rights of a third person only if the litigant has a substantial relationship to the third person, the third person is unable to assert the constitutional rights on his or her own behalf, and failing to grant the litigant standing would dilute the third person's constitutional rights." Kerr v. Killian , 197 Ariz. 213, 217 ¶ 16, 3 P.3d 1133, 1137 (App. 2000). Applying those concepts here, Susan has a substantial relationship to the children, the children are unable to assert constitutional rights on their own and failing to recognize Susan as having standing would dilute the children's asserted constitutional rights. Accordingly, on this record, Susan has standing to challenge the constitutionality of A.R.S. § 25-409(C)(2). Id. ; see also State v. B Bar Enters., Inc. , 133 Ariz. 99, 101 n.2, 649 P.2d 978, 980 (1982) ("standing is not a constitutional jurisdictional requirement in the state courts of Arizona").
II. Susan's Third-Party Visitation Request Is Barred By A.R.S. § 25-409(C)(2).
¶ 9 To be eligible for visitation under A.R.S. § 25-409(C)(2), Susan must show, among other things, that the children "were born out of wedlock." Id. Sheets , however, held that adoption changes a child's "legal status to that of a child born in wedlock, see A.R.S. § 8-117(A)," meaning Susan cannot make this required showing. 238 Ariz. at 56 ¶ 1, 356 P.3d at 342. Although Susan disputes the breadth of Sheets and whether it is distinguishable (recognizing Sheets did not address the constitutional issue pressed here), she does not seek to revisit Sheets . Indeed, Susan relies on Sheets to argue that the statute as construed in that case is unconstitutional. And Susan does not dispute that, as construed by Sheets , she is precluded from seeking third-party visitation under A.R.S. § 25-409(C)(2). Accordingly, Susan's third-party visitation request is barred by A.R.S. § 25-409(C)(2), requiring the court to address whether that statute is constitutional as applied.
III. A.R.S. § 25-409(C)(2) Is Constitutional As Applied.
¶ 10 The superior court found that the rational basis test was the proper analysis to assess the constitutionality of A.R.S. § 25-409(C)(2) as applied. Although Susan argues for a higher level of scrutiny, under Arizona case law, the rational basis test applies. See Jackson , 199 Ariz. at 312-13 ¶ 26, 18 P.3d at 106-07 (applying rational basis to a constitutional challenge to A.R.S. § 25-409(F) (2000), currently codified at A.R.S. § 25-409(H) ); accord Graville v. Dodge , 195 Ariz. 119, 125-126 ¶¶ 26-27, 985 P.2d 604, 610-11 (App. 1999). Accordingly, the court applies the rational basis test to Susan's challenge. In doing so, the court discusses various possible applications of the statute, starting with examples of how A.R.S. § 25-409(C)(2) treats adopted and biological children similarly.
A. Where A.R.S. § 25-409(C)(2) Treats Adopted And Biological Children Similarly.
¶ 11 Susan argues that, under A.R.S. § 25-409(C)(2) as construed by Sheets , biological "children can become subject to a third-party visitation petition under certain circumstances. Adopted children, on the other hand, can never receive the benefits of third-party visitation." So far as it goes, this is a fair summary of the law. But examining various examples, in the context used by the superior court, further explains the law.
¶ 12 The superior court focused on an adult's ability to seek third-party visitation under A.R.S. § 25-409(C)(2) comparing adopted children and biological children. This comparison merits further discussion here, starting with the children Tonya adopted.
¶ 13 After their adoption by Tonya, the children were deemed "born in wedlock" under *1212 Sheets , 238 Ariz. at 56 ¶ 1, 356 P.3d at 342, barring Susan's third-party visitation request under A.R.S. § 25-409(C)(2). On the record presented, however, there is no showing that the children were "born out of wedlock" before Tonya adopted them. If the children were born in wedlock and not adopted, no one could seek third-party visitation under A.R.S. § 25-409(C)(2). Accordingly, the record in this case does not compel a conclusion that Tonya's adoption barred Susan's third-party visitation request.
¶ 14 Turning to biological children, in finding the statute unconstitutional, the superior court concluded that, if Susan and Tonya "were divorcing and the children were naturally born to [Tonya], [Susan] would have no difficulty petitioning for visitation rights to the children." Recognizing that statement is based on hypothetical facts not presented in this case, it also turns on when the children in that hypothetical were born and other important details.
¶ 15 If Tonya had given birth to the children during her marriage to Susan, the children would have been born in wedlock. In that case, there could be no claim the children were born "out of wedlock" as is required under A.R.S. § 25-409(C)(2). Accordingly, there would be no third-party visitation rights for the same reason Susan has no third-party visitation rights given Tonya's adoption of the children (because the children would not be "born out of wedlock" as required by A.R.S. § 25-409(C)(2) ).
¶ 16 If Tonya had given birth to the children before she was married to Susan, whether the statute would allow Susan to seek third-party visitation rights would turn on Tonya's marital status when each child was born. If Tonya was married to someone else at the time of their births, the children would have been born in wedlock. Accordingly, there would be no third-party visitation rights for the same reason Susan has no third-party visitation rights given Tonya's adoption of the children (because the children would not be "born out of wedlock" as required by A.R.S. § 25-409(C)(2) ).
¶ 17 Each of these examples treats adopted and biological children the same, creating no basis for a constitutional challenge alleging similarly situated groups are being treated differently. On the record presented, there is no reason to believe that these examples fail to cover all possibilities presented in this case.
B. Where A.R.S. § 25-409(C)(2) Treats Adopted And Biological Children Differently.
¶ 18 To continue with a final example, if Tonya had given birth to the children when she was not married, the children would be "born out of wedlock" for purposes of A.R.S. § 25-409(C)(2). In that event, if Susan also could allege the children's "legal parents are not married to each other at the time the petition is filed," she could seek third-party visitation under A.R.S. § 25-409(C). The question, then, is whether that possibility (which is not presented by the facts of this case) means that A.R.S. § 25-409(C), or at least the "born out of wedlock" requirement of that statute, is unconstitutional under the rational basis test.
¶ 19 Under rational basis scrutiny, a statute will be upheld "if it has any conceivable rational basis to further a legitimate governmental interest." Ariz. Downs v. Ariz. Horsemen's Found ., 130 Ariz. 550, 555, 637 P.2d 1053, 1058 (1981) ; accord Romer v. Evans , 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Under the rational basis test, legislation will be upheld "so long as (1) the court can find some legitimate state interest to be served by the legislation and (2) the facts permit the court to conclude that the legislative classification rationally furthers the state's legitimate interest." Kenyon v. Hammer , 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984) (citations omitted). This standard is accompanied by "a strong presumption supporting the constitutionality of a legislative enactment and the party asserting its unconstitutionality bears the burden of overcoming the presumption." Eastin v. Broomfield , 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977) ; see also McGowan, 366 U.S. at 425-26, 81 S.Ct. 1101 ("State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.").
¶ 20 As Susan notes, the Legislature has declared that Arizona's public policy reflected in A.R.S. Title 25 ("Marital and Domestic *1213 Relations") includes promoting "strong families" and that, "absent evidence to the contrary, it is in a child's best interest ... [t]o have substantial, frequent, meaningful and continuing parenting time with both parents." A.R.S. § 25-103(A)(1) & (B)(1). This is undisputable. But as Doty-Perez I held, Susan does not have parental rights to the children. 241 Ariz. at 373 ¶ 1, 388 P.3d at 10. Moreover, this legislative policy declaration does not, as Susan suggests, address whether children should have "quasi-parental relationships with third parties."
¶ 21 Susan does not appear to dispute that, as set forth in A.R.S. § 8-117(A), Arizona has a legitimate interest in treating adopted children as if they were born in lawful wedlock to avoid them being treated as "illegitimate." For at least 85 years, Arizona has declared that adopted children are deemed to have been born in wedlock to prevent any such perceived stigma. See, e.g., A.R.S. § 8-117(A) ; Ariz. Code § 27-208 (1939) (similar); Ariz. Rev. Code § 124 (1928) (following enactment of Laws 1933, Ch. 57, § 4, providing that, after entry of adoption order, adopted child shall "be, to all intents and purposes, the child and heir at law of the person so adopting [the child], and entitled, to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock ") (emphasis added). Particularly given this long-standing statutory declaration, in enacting A.R.S. § 25-409(C) far more recently, the Legislature is presumed to have known that third parties generally would not be able to seek visitation of an adopted child under that statute. See Wareing v. Falk , 182 Ariz. 495, 500, 897 P.2d 1381, 1386 (App. 1995) ("It is well settled that the legislature is presumed to know existing law when it enacts a statute.") (citing cases).
¶ 22 Susan asserts that, as construed by Sheets , A.R.S. § 25-409(C)(2), denies adopted "children equal treatment under the law by categorically preventing them from receiving legally protected third-party visitation." Third-party visitation, however, is "purely a creature of statute." In re Maricopa Cty. Juv. Action No. JA-502394 , 186 Ariz. 597, 599, 925 P.2d 738, 740 (App. 1996). Absent a constitutional defect, delineating third-party visitation rights is for the Legislature, not this court. See Marco C. v. Sean C. , 218 Ariz. 216, 219 ¶ 9, 181 P.3d 1137, 1140 (App. 2008) (noting that, even when "the result may be harsh," the court "do[es] not second-guess the legislature's policy decision").
¶ 23 Susan acknowledges that "[i]t is also conceivable that A.R.S. § 8-117(A) seeks to prevent adopted children and their parent from being subjected to frivolous visitation petitions by treating the child as though born into a marriage (thereby eliminating the court's jurisdiction to award visitation under A.R.S. § 25-409(C)(2) )." As construed by Sheets , that is the current state of Arizona law. And given possible concerns about third-party visitation petitions by biological parents whose parental rights had been terminated, or extended family of such individuals, legitimate state interests may be served by such legislation. See Kenyon , 142 Ariz. at 78, 688 P.2d at 970 ; see also Church v. Rawson Drug & Sundry Co. , 173 Ariz. 342, 350, 842 P.2d 1355, 1363 (App. 1992) ("In considering whether a statute rationally advances a legitimate goal, a court can consider 'either the actual basis on which the legislature acted or any hypothetical basis on which it might have acted.' ") (citation omitted). The legislative classifications drawn in both A.R.S. § 8-117(A) and A.R.S. § 25-409(C)(2) rationally further those legitimate state interests. Kenyon , 142 Ariz. at 78, 688 P.2d at 970.
¶ 24 Susan adds, with substantial force, that A.R.S. § 25-409"already prevents" serial, frivolous visitation petitions "by requiring all third-party visitation to be in the child's best interests." In fact, that statute requires the court to "give special weight to the legal parents' opinion of what serves their child's best interests and consider all relevant factors including" five enumerated topics. A.R.S. § 25-409(E). Susan adds that "[i]f a court wanted to prevent a third party from obtaining § 25-409 visitation, the appropriate route would be to find the visitation to be against the child's best interests-not to remove adopted children from § 25-409 's ambit entirely." The issue, however, is whether the statute as enacted by the Legislature is constitutional as applied. Stated differently, the issue is not whether there are alternatives to the legislation enacted but, rather, whether the legislation enacted satisfies the rational *1214 basis test. See State v. Hammonds, 192 Ariz. 528, 532 ¶ 15, 968 P.2d 601, 605 (App. 1998) (noting rational basis does not require the State to select "the least intrusive, nor most effective, means of achieving its goals").
¶ 25 As the Arizona Supreme Court has noted, under the rational basis test,
the constitutional requirement of equal protection is violated "only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." In applying this test, the courts accept the legislative determination of relevancy so long as it is reasonable, even though it may be disputed, debatable or opposed by strong contrary arguments.
Kenyon , 142 Ariz. at 78, 688 P.2d at 970 (citations omitted). On this record, Susan has not shown that A.R.S. § 25-409(C)(2) fails to rationally further Arizona's legitimate interests or that the distinctions it makes are irrelevant to the achievement of those legitimate interests. Accordingly, because A.R.S. § 25-409(C)(2) as applied satisfies the rational basis test, the superior court's finding that it is unconstitutional is vacated. See Jackson , 199 Ariz. at 313 ¶ 27, 18 P.3d at 107 ; Graville , 195 Ariz. at 126 ¶ 27, 985 P.2d at 611.[7]
¶ 26 Notwithstanding this conclusion, it merits acknowledging the truth in Susan's assertion that application of A.R.S. § 25-409(C)(2) as written may yield harsh results. That is true here. And it would be true in other cases where, for example, a child adopted by one parent has lived with that parent and his or her spouse for many years but, in a divorce, the non-adoptive spouse is barred from seeking visitation rights of any sort. Although this case involves a same-sex marriage, potentially harsh results could also occur in opposite-sex marriages and in both same- and opposite-sex unmarried relationships. Accepting Susan's assertions as true, however, absent a constitutional infirmity, it is for the Legislature not this court to make those policy determinations.
IV. Attorneys' Fees On Appeal.
¶ 27 Tonya seeks attorneys' fees on appeal pursuant to A.R.S. § 25-324 and Ariz. R. Civ. App. P. (ARCAP) 21. In the exercise of this court's discretion, each party shall bear her own attorneys' fees on appeal. Tonya may recover her costs in this appeal upon compliance with ARCAP 21.
CONCLUSION
¶ 28 For the foregoing reasons, the judgment of the superior court is vacated and this matter remanded for proceedings consistent with this opinion.

Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

On April 22, 2015, Arizona Governor Doug Ducey issued a statement "instructing the Arizona Department of Child Safety to immediately ensure that all legally married couples in Arizona are able to jointly serve as foster parents and adopt."

Although Susan also sought in loco parentis visitation under A.R.S. § 25-409(C)(4), due to procedural notice issues, that request is not at issue here.

"On entry of the decree of adoption, the relationship of parent and child and all the legal rights, privileges, duties, obligations and other legal consequences of the natural relationship of child and parent thereafter exist between the adopted child and the adoptive parent as though the child were born to the adoptive parent in lawful wedlock. The adopted child is entitled to inherit real and personal property from and through the adoptive parent and the adoptive parent is entitled to inherit real and personal property from and through the adopted child the same as though the child were born to the adoptive parent in lawful wedlock." A.R.S. § 8-117(A).

The superior court used "natural born" synonymously with "biological" as used in A.R.S. § 25-401(4).

In supplemental briefing in this appeal, Susan argued Doty-Perez I should be revisited in light of McLaughlin v. Jones , 243 Ariz. 29, 401 P.3d 492 (2017). The mandate in Doty-Perez I issued long ago, and Susan has not shown how this court would have jurisdiction to revisit the final decision in that appeal. See Ariz. R. Civ. App. P. 24(a) ("An appellate court retains jurisdiction of an appeal until it issues the mandate."). Accordingly, the issues decided here are limited to those involving A.R.S. § 25-409(C)(2).

Given this conclusion, to the extent Susan argues A.R.S. § 25-409(C)(2) is facially unconstitutional, this court need not address that argument. See Phelps Dodge Corp. v. Ariz. Elec. Power Co-op., Inc. , 207 Ariz. 95, 109-10 ¶ 46, 83 P.3d 573, 587-88 (App. 2004) (noting, unless facially unconstitutional under any possible factual application, the "constitutionality [of a statute] can only be attacked as applied.").